## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MOHAMAD HAZEM ALABRASH, *et al.*,

              Plaintiffs,

     v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

              Defendants.

Civil Case No. 22-1875 (CKK)

### MEMORANDUM OPINION
(November 15, 2022)

Pending before the Court is Defendants' [15] Motion to Transfer and Dismiss, in which Defendants seek to transfer this case to the United States District Court for the Eastern District of Texas and/or to dismiss this case under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3). Upon review of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court will **GRANT** Defendants' [15] Motion to Transfer and **ORDER** that this case be transferred to the U.S. District Court for the Eastern District of Texas.

## I.  BACKGROUND

Mohamed Hazem Alabrash ("Plaintiff") and Ola Nona Alabrash reside in Plano, Texas. Defs.' Mot. at 1.  Plano is part of the Eastern District of Texas.  *Id.*  Plaintiff filed an 1-589 Application for Asylum and Withholding of Removal ("Asylum Application") with Defendant U.S. Citizenship and Immigration Services on March 28, 2017.  Compl. ¶ 2.  The application was assigned to the USCIS Asylum Office in Houston, Texas.  Pl.'s Opp'n at 1.  Ola Nona Alabrash is

---

[1] The Court's consideration has focused on: Defendants' Memorandum in Support of Motion to Transfer and Dismiss ("Defs.' Mot."), ECF No. 15; Plaintiff's Opposition to Defendants' Motion to Transfer and Dismiss ("Pl.'s Opp'n"), ECF No. 16; and Defendants' Reply Memorandum in Support of Motion to Transfer and Dismiss ("Defs.' Reply"), ECF No. 18.  In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

Mohamed Hazem Alabrash's spouse and listed on his Asylum Application as a derivative applicant.  *Id.*  Plaintiff alleges that they had their biometric information collected by USCIS in April 2017 and have not since received any communications about when they would be scheduled for an interview.  *Id.* ¶¶ 3–4.  Plaintiff's Asylum Application remains pending at the USCIS Houston Asylum Office.  *Id.* ¶ 4.

Plaintiff filed their Complaint in this action on June 29, 2022 against Defendants United States Department Of Homeland Security (DHS), United States Citizenship and Immigration Services (USCIS), DHS Secretary Alejandro Mayorkas, USCIS Director Ur Jaddou, FBI Director Christopher Wray, the Houston Asylum Office, and other USCIS officials for failure to adjudicate their Asylum Application.  Compl.  *Id.* ¶¶ 7–15.  Plaintiff seeks a writ of mandamus or an order under the Administrative Procedure Act compelling Defendants to "complete administrative processing and schedule an interview for the pending Asylum application."  *Id.* ¶ 33.

On September 6, 2022, Defendants filed the pending [15] Motion to Transfer and Dismiss. As for their Motion to Transfer, Defendants contend that the case lacks sufficient ties to this District and that the Eastern District of Texas is a more appropriate and convenient forum.  *See generally* Defs.' Mot.  Defendant states that "[t]he lone Defendant that resides for official capacity purposes in the District of Columbia is the Secretary of Homeland Security."  *Id.* at 1.  Defendant USCIS is not located in the District of Columbia; it is headquartered in Camp Springs, Maryland. Def.'s Mot. at 1–2.

In response, Plaintiff contends that the "core issue" in the case is the impact of a federal policy change on Plaintiff's application processing.  Pl.s' Opp'n at 1–2.  Specifically, Plaintiff alleges that on January 29, 2018, while Plaintiff's Asylum Application was pending, DHS and USCIS changed their policy from "First In – First Out" ("FIFO"), wherein cases were called for

interview in the order they were received, to "Last In – First Out" ("LIFO"), which caused Plaintiff's application, among thousands of others, "to be relegated to the last category of USCIS' scheduling priority." *Id.* at 1.  This policy change occurred when USCIS was headquartered in the District of Columbia.  *Id.*; *see also* Def.'s Mot. at 2 (noting that USCIS moved from the District of Columbia to Maryland in 2020).  Accordingly, Plaintiff argues, "[b]ecause the core issue in this case is the act of Defendants changing their scheduling and the harm that it has caused Plaintiff, which did occur in this judicial district, there is a substantial nexus to this judicial district."

## II.  LEGAL STANDARD

A court may transfer an action to any other district where it might have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The purpose of § 1404(a) "is to prevent the waste of time, energy, and money, and to protect litigants, witnesses, and the public from unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation and quotation marks omitted).  District courts have discretion to transfer a case based on an "individualized case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Defendants seeking transfer must first establish that the plaintiff could have brought suit in the proposed transferee court.  *Treppel v. Reason*, 793 F. Supp. 2d 429, 435 (D.D.C. 2011) (JDB).  The movant also bears the "heavy burden of establishing that [the plaintiff's] choice of forum is inappropriate."  *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (JDB) (internal quotation marks omitted).  To satisfy this burden, defendants seeking transfer must show that "considerations of convenience and the interest of justice weigh in favor of transfer."  *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 65 (D.D.C. 2003) (RMU).  A

court may transfer a case only if the balance of private and public interests weighs in favor of transfer. *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001) (RMU).

Finally, "[c]ourts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia.  By naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere."  *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993).

## III.  DISCUSSION

The Court will first consider Defendants' Motion to Transfer and, as the Court concludes that transfer to the Eastern District of Texas is proper for the reasons stated below, it need not reach the merits of Defendants' arguments for dismissal.  *See Pub. Citizen v. U.S. District Court for the District of Columbia*, 486 F.3d 1342, 1348 (D.C. Cir. 2007) ("[C]ertain non-merits, nonjurisdictional issues may be addressed preliminarily[.]") (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425–26, 430–34 (2007)); *see, e.g.*, *Willis v. Chase Home Finance*, 923 F. Supp. 2d 89, 92 (D.D.C. 2013) (CKK); *Spaeth v. Mich. State Univ. College of Law*, 845 F. Supp. 2d 48, 52–53 (D.D.C. 2012) (ESH); *Aftab v. Gonzalez*, 597 F.Supp.2d 76, 79 (D.D.C. 2009) (RWR).

Defendants seek to transfer this case to the Eastern District of Texas, where Plaintiff resides and where the USCIS Houston Asylum Office, at which Plaintiff's Asylum Application is pending, is located.  Def.'s Mot. at 1.  Defendants do not dispute that there is a statutory basis for venue in this District because at least one Defendant resides here: the Secretary of DHS.  Defs.' Mot. at 1.  However, Defendants argue that the "case presents a controversy with no meaningful connection to the district of Columbia" and it should therefore be transferred to the Eastern District of Texas.

4

*Id.* at 3.  The Court concludes that although venue lies in both this District and the Eastern District of Texas, the private and public interests at stake support transferring this case to the Eastern District of Texas.

### A.  Venue in Eastern District of Texas

The Court first addresses the threshold question of whether this action "might have been brought" in the transferee forum.  *See* 28 U.S.C. § 1404(a).  "In actions raising a federal question by naming as a defendant a federal agency or United States official in his or her official capacity, venue is proper in any judicial district where (1) a defendant in the action resides; (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated; or (3) a plaintiff resides if no real property is involved in the action."  *Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 356 (D.D.C. 2014) (BAH) (quoting 28 U.S.C. § 1391(e)(1)) (internal quotation marks omitted).  As Plaintiff resides in the Eastern District of Texas, and the USCIS Field Office that has failed to adjudicate his Asylum Application—on which Plaintiff now seeks to compel action—is in the Eastern District of Texas, the case might have been brought there.  Furthermore, Plaintiff does not dispute that venue would be proper in the Eastern District of Texas, rather that they prefer to litigate the case in the District of Columbia.

Having established proper venue in the Eastern District of Texas, the Court must now consider whether Defendants have shown that the private interest and public interest considerations in this case counsel in favor of transfer to the Eastern District of Texas.

### B.  Private Interest Factors

"To determine whether 'considerations of convenience and the interests of justice weigh in favor of a transfer,' courts consider several private-interest factors, including: (1) the plaintiff's

choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." *Beall v. Edwards Lifesciences LLC*, 310 F. Supp. 3d 97, 103 (D.D.C. 2018) (EGS) (internal citations omitted). Here, the balance of factors weighs in favor of transfer.

### 1. Factors (1) and (2): Parties' Choices of Forum

The first and second factors together lean toward granting Defendants' Motion to Transfer. Generally, a plaintiff's choice of forum is afforded substantial deference. *Nat'l Wildlife Fed. V. Harvey*, 437 F. Supp. 2d 42, 46 (D.D.C. 2016) (CKK). However, "[t]his deference is substantially lessened when the plaintiff is a 'foreigner' to the forum, or there is a lack of 'meaningful ties' between the controversy, the parties, and the forum." *Renchard v. Prince William Marine Sales, Inc.*, 28 F. Supp. 3d 1, 11 (D.D.C. 2014) (BAH) (internal citations omitted). More specifically, "when 'the forum preferred by the plaintiff is not his home forum,' and the defendant prefers the plaintiff's home forum, then there is little reason to defer to the plaintiff's preference." *Aishat v. U.S. Dep't of Homeland Sec.*, 288 F. Supp. 3d 261, 268 (D.D.C. 2018) (JEB) (quoting *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52 (D.D.C. 2000) (RMU)).

Here, Defendant argues that Plaintiff's choice of forum should be afforded minimal weight because the District of Columbia is not Plaintiff's home forum. Defs.' Mot. at 6. Plaintiff lives in the Eastern District of Texas. *Id.* at 1. And where Defendants' preferred forum is Plaintiff's home forum, as here, that typically cuts in favor of transfer. *Aishat*, 288 F. Supp. 3d at 269; *see also*

*Akinyode v. U.S. Dep't of Homeland Sec.*, No. 21-110 (JDB), 2021 WL 3021440, at *3 (D.D.C. 2021).

In their response, Plaintiff states that the policy decision to change the asylum scheduling system from FIFO to LIFO was made by DHS and USCIS leadership who were, at the time, located in the District of Columbia.  Pl.'s Opp'n at 4.  Plaintiff therefore argues that "this Court should accord substantial weight to the location where the actual policy was decided and implemented," *id.* at 5, as there is a "substantial nexus between Defendants' conduct in changing its scheduling system and Plaintiffs [sic] damages," *id.* at 6.  Assuming that the change from FIFO to LIFO was in fact made within the District of Columbia, the Court is nevertheless unpersuaded for two reasons: that policy change is not being challenged in the instant litigation, and the location of policy decision-making is not determinative in the Court's inquiry.

Plaintiff relies on *Southern Utah Wilderness Alliance v. Norton* to support their position that the location of defendants' decision-making constitutes a meaningful connection to that state. Pl.'s Opp'n at 3–4; *S. Utah Wilderness All. v. Norton*, 315 F. Supp. 2d 82 (D.D.C. 2004) (JDB). But Plaintiff's reliance is misplaced.  The court in *Southern Utah* noted—and Plaintiff in fact quotes in their brief—that "[t]he primary issue in this case is not [the agency's] change in its… policy; instead, it is the [bureau's]" specific actions that followed." *Id.* at 87; *see* Pl.'s Opp'n at 5. The same is true here.  Although Plaintiff alleges that the "core issue" is Defendants' policy change from FIFO to LIFO, *id.* at 2, that is not true; rather, the issue before the Court is the processing of Plaintiff's Asylum Application on which Plaintiff wants to compel action.  Plaintiff has not brought a claim challenging the Defendants' LIFO policy.  *See* Defs.' Mot. at 3–4.  Any decision-making

at issue in Plaintiff's case occurred in Texas, where the USCIS Asylum Office responsible for Plaintiff's Asylum Application is located, rather than in the District of Columbia.

Plaintiff also cites to *Wilderness Society v. Babbitt* for the idea that policy decision-making that occurred within the District of Columbia can demonstrate a case's meaningful connection to the District.  Pl.s' Opp'n at 3–4; *Wilderness Soc. v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000) (RWR).  However, Plaintiff has cherrypicked sections of the *Wilderness Society* opinion.  There, the court found that there was a connection not only because of the Secretary's "direct involvement in the [agency's] decision," but also due to plaintiffs' ties to the District of Columbia—four of the eight plaintiffs were headquartered in the District of Columbia and two others had offices there— as well as "the national scope of the environmental issue plaintiffs raise." *Id.* at 14–15.  Here, Plaintiff does not have similar ties to the District of Columbia nor does Plaintiff's Complaint implicate issues of national scope.  Accordingly, to the extent that Plaintiff's argument regarding the LIFO policy change is even relevant here, it is insufficient to show a meaningful connection as the location of policy decision-making is not determinative in the Court's inquiry.

Finally, the Court has frequently considered similar arguments to those Plaintiff now raises. Previous litigants' arguments that "the USCIS policy underlying the agency's decision was issued by a senior official at USCIS headquarters" have been rejected because "even if true, such 'attenuated or insignificant involvement by an official in the District of Columbia does not support venue'" in the District. *Bourdon v. U.S. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 307 (D.D.C. 2017) (CKK) (quoting *Pearson v. Rodriguez*, 174 F. Supp. 3d 210, 213 (D.D.C. 2016) (TFH)).

The Court also gives some deference to Defendants' preference to litigate this case in the Eastern District of Texas.  Unlike plaintiff's choice of forum, a defendant's choice of forum is typically not granted deference unless defendants can demonstrate the "added convenience and

justice of litigating" in the transferee forum.  *Aishat*, 288 F. Supp. 3d at 269.  Defendants have demonstrated that the Eastern District of Texas has a meaningful connection to the challenged action, which this District lacks, and that it is more convenient for the parties, as discussed below.

Altogether, because Plaintiff resides in the Eastern District of Texas, where Defendants seek to transfer this action; Plaintiff has failed to demonstrate meaningful ties to the District of Columbia; and Defendants' choice of forum is given some deference, the Court finds that these factors weigh in favor of transfer.

### 2.  Factor (3): Where the Claim Arose

The third factor is of predominant importance in this case and weighs strongly in favor of transfer.  When considering where a plaintiff's claim arose in Administrative Procedure Act cases, courts look to where the decision-making process occurred.  *Ngonga v. Sessions*, 318 F. Supp. 3d 270, 275 (D.D.C. 2018) (JEB).  "Plaintiffs cannot 'manufacture venue in the District of Columbia' by naming the administrators of USCIS and DHS as defendants."  *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 32 324, 332 (D.D.C. 2020) (RC) (quoting *Pearson v. Rodriguez*, 174 F. Supp. 3d 210, 213 (D.D.C. 2016) (TFH)).  Cases challenging the actions of local USCIS offices are frequently and appropriately transferred to the venue encompassing those local offices. *Bourdon v. U.S. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 305 (D.D.C. 2017) (CKK) (collecting cases).

Plaintiff's Asylum Application was assigned to and remains pending before the USCIS Houston Asylum Office.  Compl. ¶ 2; Pl.'s Opp'n at 1.  Plaintiff does not dispute this fact. Accordingly, the Court is satisfied that Plaintiff's claim arose in the Eastern District of Texas, which weighs strongly in favor of transfer to that jurisdiction.

### 3.  Factor (4): Convenience of the Parties

The convenience of the parties also tilts in favor of transfer.   "Unless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others." *Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44, 50 (D.D.C. 2005) (RCL) (quoting *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1139 (6th Cir. 1991)).   Therefore, "litigating in the transferee district… should lead to an overall increase in convenience for the parties" to weigh in favor of transfer. *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42, 48 (D.D.C. 2011) (RWR).   Furthermore, courts in this Circuit have held that a plaintiff "cannot reasonably claim to be inconvenienced by litigating in [his] home forum."  *Aishat*, 288 F. Supp. 3d at 269 (quoting *Tower Labs., Ltd. V. Lush Cosmetics Ltd.*, 285 F. Supp. 3d 321, 326 (D.D.C. 2018) (JEB)).

Here, Plaintiff has not identified any inconvenience nor detriment should this case be transferred to the Eastern District of Texas.  Accordingly, the Court finds that convenience for the parties would be increased by transferring the matter to Texas.

### 4.  Factors (5) and (6): Convenience of Witnesses and Ease of Access to Sources of Proof

The remaining private interest factors—the convenience of the witnesses and the ease of access to sources of proof—support transfer as well.  The convenience of witnesses is only relevant "to the extent that witnesses may actually be unavailable for trial in one of the fora." *Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 18 (D.D.C. 2009) (RMU).   "Without evidence to the contrary, courts assume that witnesses will voluntarily appear."  *Mahoney v. Eli Lilly & Co.*, 545 F. Supp. 2d 123, 127 (D.D.C. 2008) (RMU).   Courts in this Circuit have held that because "USCIS personnel who best know the individual causes of any delays in processing times will… be available" at "centers" in the specific field offices, "convenience to witnesses also tips the scales in favor of transfer." *Pasem v. U.S. Citizenship & Immigration Servs.*, No. 20-cv-344 (CRC), 2020

WL 2514749, at *4 (D.D.C. May 15, 2020).  The same logic applies to any additional sources of proof that are relevant.  *Akinyode*, 2021 WL 3021440, at *4.

Plaintiff has not identified any inconvenience for witnesses nor difficulty accessing sources of proof in the Eastern District of Texas.  Therefore, because witnesses and sources of proof are likely located in the Houston Asylum Office, the Court finds that these final factors counsel toward transferring the matter to the Eastern District of Texas.

### C.  Public Interest Factors

Courts also consider whether certain public interest factors weigh in favor of transfer, including "(1) the transferee's familiarity with the governing laws, (2) the relative congestion of each court, and (3) the local interest in deciding local controversies at home."  *Beall*, 310 F. Supp. 3d at 103.

The interest in deciding local controversies at home is the public interest factor of most importance in this case.  "To determine whether a controversy is local in nature, courts consider a wide variety of factors, including: where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy, whether the issue involved federal constitutional issues rather than local property laws or statutes; whether the controversy involved issues of state law, whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official."  *Otay Mesa Prop. L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122, 126 (D.D.C. 2008) (RMC).

For many of the same reasons discussed above, the Court concludes that this case is predominately a local controversy that should be decided in the Eastern District of Texas.  Plaintiff resides within the Eastern District of Florida and Plaintiff's Asylum Application was adjudicated and denied by the USCIS Houston Asylum Office located in that District.  *Cf. Mohammadi*, 609

11

F.Supp.2d at 19 (claim relating to application for naturalization was a local controversy for Maryland because "the plaintiff resides in Maryland and has conducted both his fingerprinting and his application interview at USCIS offices located in Maryland" and "the plaintiff's application for naturalization is currently pending before the Baltimore USCIS office and officials there are responsible for adjudicating his application"); *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 71 (D.D.C. 2003) (RMU) (challenge to permits issued in Florida was a local controversy for Florida despite the fact "that the controversy ha[d] a national aspect," in part because "the decision-making process up to and including the final record of decision took place not in Washington but in Florida"). Additional facts point toward the local nature of this controversy. Plaintiff asks this Court to compel action—the approval of Plaintiff's Asylum Application—that would occur in the Eastern District of Texas. *See Abusadeh v. Chertoff*, No. 06-014 (CKK), 2007 WL 2111036, at *6 (D.D.C. July 23, 2007) (granting motion to transfer in part because "the action that Plaintiff seeks this Court to compel is one that will occur not in the District of Columbia, but rather in Houston, Texas.").

The remaining public interest factors are of less relevance in this case. First, this case is governed by federal laws, of which both this District and the Eastern District of Texas are equally familiar. *See W. Watersheds Proj. v. Pool*, 942 F. Supp. 2d 93, 101 (D.D.C. 2013) (JDB). And second, Defendants offer evidence that "each District… faces congested dockets." Def.'s Mot. at 10.

In sum, the public interest factors tip the scales in favor of granting Defendants' Motion to Transfer, largely because the adjudication of Plaintiff's Asylum Application is a local controversy that is better handled in the Eastern District of Texas.

### D.  Defendants' Motion to Dismiss

Defendants have also moved this Court, in the alternative, to dismiss Plaintiff's Complaint for lack of venue and for failure to state a claim.  Defs.' Mot. at 10–15.  Because the Court grants Defendants' Motion to Transfer, it will not address the merits of Defendants' motion to dismiss on these grounds.  Defendants' motion to dismiss will be held in abeyance and resolved in the United States District Court for the Eastern District of Texas.

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that Defendants have demonstrated that the applicable private and public interest factors support transferring this action to the Eastern District of Texas.  Accordingly, the Court **GRANTS** Defendant's [15] Motion to Transfer.  An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Date: November 15, 2022